# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

RONALD LEE HODGES and )
CAROLYN ANN HODGES, )
                                                  Plaintiffs, )
v. )
                                                  ) No. 05-5060-CV-SW-FJG
COTTAGE HILL APARTMENTS, )
d/b/a Kimberling City Housing Auth. 2, )
d/b/a Signature Management Corp., )
d/b/a Wildwood Resort Properties, LLC, )
                                                  Defendant. )

# ORDER

Pending before the Court are (1) Defendant's Motion for Summary Judgment (Doc. No. 65); (2) Defendant's Motion to Strike Plaintiffs' Response to Defendants' Reply Suggestions in Support of Defendant's Motion for Summary Judgment (Doc. No. 72); (3) Plaintiffs' Motion for Reconsideration of Motion for Appointment of Counsel (Doc. No. 73); and (4) Defendant's Motion for Extension of Time (Doc. No. 75). Each will be considered below.

**I.**    **Plaintiffs' Motion for Reconsideration of Motion for Appointment of Counsel (Doc. No. 73)**

Plaintiffs have moved for reconsideration of the Court's previous Order (Doc. No. 10) denying appointment of counsel. The pending motion is plaintiffs' fourth motion for reconsideration of the Court's Order denying appointment of counsel. See Doc. No. 13, motion for reconsideration; Doc. No. 29, motion for reconsideration; and Doc. No. 35, motion for reconsideration. In the Court's most recent Order denying plaintiffs' motion for reconsideration (Doc. No. 44), the Court advised plaintiffs that unless plaintiffs experience a significant change in circumstances, plaintiffs' further motions for reconsideration would likely be denied.

In plaintiffs' most recent request for reconsideration, plaintiffs note that (1) their financial status has changed; and (2) plaintiffs may be making legal errors as a result of their legal inexperience and/or mental conditions. Defendant opposes plaintiffs' motion, noting the Court's previous orders denying appointment of counsel and reconsideration of same. Defendant states that plaintiffs' change in financial status is not a "significant change in circumstances." Further, the Court notes that plaintiffs have not produced further evidence of a change in their mental conditions. Therefore, in its discretion, the Court finds that plaintiffs have not met the need-based factors justifying appointment of counsel in this matter. Plaintiffs' motion for reconsideration (Doc. No. 73) is **DENIED.**

II. **Defendant's Motion to Strike Plaintiffs' Response to Defendant's Reply Suggestions in Support of Defendant's Motion for Summary Judgment (Doc. No. 72)**

After briefing on the defendant's motion for summary judgment was complete, plaintiffs filed what they titled their "Response to Defendants' Reply Suggestions in Support of Defendants' Motion for Summary Judgment." (Doc. No. 70). Defendant filed a motion to strike plaintiffs' response to defendant's reply suggestions in support of defendant's motion for summary judgment (Doc. No. 72). Defendant requests that, as this sort of responsive pleading (more aptly called a sur-reply) is not contemplated or allowed in the Federal Rules of Civil Procedure or in this court's local rules, the Court strike the response (Doc. No. 70) and not consider it in ruling on defendant's motion for summary judgment. The Court agrees with defendant's assertions, and further notes that the information presented in plaintiffs' sur-reply is not helpful to the Court, as it is replete with suppositions and unsupported assertions. Therefore, the Court **GRANTS** defendant's motion to strike plaintiffs' sur-reply (Doc. No. 72).

**III.    Defendant's Motion for Summary Judgment (Doc. No. 65)**

   **A.    Statement of Facts.[1]**

The property known as Cottage Hill Apartments is owned by Kimberling City Housing, L.P., a Missouri limited partnership. Kimberling City Housing, L.P. contracts with a related entity, Signature Management Company, an Iowa corporation registered to do business in Missouri, to manage the Cottage Hill Apartments property. For purposes of this statement of facts, the ownership and management entities of the property will be collectively referred to as "Signature." Signature operates the property under the auspices of the Section 42 Tax Credit Program where tenants must meet certain income restrictions.

In the process of inquiring about housing with Signature in late February or early March 2005, Plaintiffs Ronald Lee Hodges ("Ronald") and Carolyn Ann Hodges ("Carolyn") originally contemplated making a joint housing application, but were informed by Signature that their combined income was too large to qualify. Ronald and Carolyn decided not to live together, and Ronald decided to submit a housing application to Signature on his own. On March 2, 2005, Ronald signed and submitted the Tax Credit Application to Signature with the information concerning Carolyn crossed out. Signature accepted Ronald's application and Ronald signed Signature's Lease Agreement and Tax Credit Addendum on March 31, 2005, and Ronald moved into the apartment the same day, completing a

---

[1] In the following recitation of facts, the Court has viewed the evidence in the light most favorable to plaintiffs, and has given them the benefit of all reasonable factual inferences. See Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1070 (8th Cir.), cert. denied, 525 U.S. 821, (1998). However, plaintiffs have failed to specifically controvert any of defendant's statement of facts in their response to the pending motion for summary judgment. (See Doc. No. 67.) In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." See Ruby v. Springfield R-12 Public School District, 76 F.3d 909, 911 n. 6 (8th Cir. 1996). In their response, plaintiffs make six statements, not supported by evidence or citations to the record, in which they make various allegations against defendant. Consequently, the facts stated below are derived from Defendant's statement of facts, unless otherwise indicated.

3

"Move In/Move Out Checklist." Ronald accepted the apartment with the knowledge that his failure to do so would result in "moving me to the end of the line." Depo. of Ronald Hodges, p. 13 line 24 to p. 14 line 4. Ronald did not list any problems with the apartment on the "Move In/Move Out Checklist." During his tenancy, Ronald fell in the tub of his apartment. Following the fall but prior to his eviction, Ronald requested and Signature installed pull/grab bars into the shower.

Attached to the Lease, and containing Ronald's initials, are the Rules and Regulations regarding Tenant conduct, which provide in pertinent part:

> (c) Lessee shall not disrupt the quiet and comfortable enjoyment of other residents. This includes but is not limited to a prohibition of any unpleasant odors, disturbing noises, disorderly persons, and threatening or foul language.
>
> (d) Lessee shall not, nor shall Lessee permit others to loiter or play in any commons areas on the property of which the Premises are a part. Neither Lessee nor their guests shall play football, baseball, volleyball, Frisbee or similar recreational games on the lawns.
>
> * * *
>
> (r) Lessee shall not engage in nor facilitate any act interfering with the operation of the Premises and related property.
>
> * * *
>
> (w) Lessee shall not permit any guests to stay with Lessee for over seven (7) days without prior written consent from Lessor.

Cottage Hill Lease Agreement, pp. 26-32 of Appendix to Doc. No. 65. The Tax Credit Addendum states in pertinent part: "only the following persons will be permitted to occupy the premises:". No other names are listed in the Tax Credit Addendum Ronald signed on March 31, 2005. Despite these representations, Carolyn lived with Ronald in his apartment throughout his tenancy, except that she would occasionally sleep in her car in an attempt to classify her status as that of a "guest."

On April 25, 2005, the Kimberling City Police Department was dispatched to

4

Ronald's apartment on a complaint made by a social worker that Ronald had become "upset and threatening." During the call to Ronald's apartment, Ronald "was speaking in a non-stop, continuous rambling manner about the government and Homeland Security, and recited several names of government officials he was going to call, including President Bush. . . ." Kimberling City Police Department Incident Report, pp. 34-35 of Appendix to Doc. No. 65. On April 26, 2005, the Kimberling City Police Department was dispatched to Ronald's apartment on a dispute between Ronald and Carolyn. Carolyn reported to the officer that she and Ronald had recently divorced.

On May 2, 2005, Signature received a complaint from another tenant concerning Ronald's behavior. The complaint, by Ronald's next door neighbor, Wanda Landreth, states in pertinent part:

> . . . the above tenant came into my apartment at night and wanted to know if his wife could sleep over at my place . . .
>
> . . . this man told me he was under the witness protection program and he worked for Homeland Security. . .
>
> . . . (he) was the one who found out John Ashcroft was taking bribes and was the reason Ashcroft resigned his job. . .
>
> . . . he told his wife was not suppose [sic] to be sleeping here at night but she does.

Landreth Complaint, pp. 38-40 of Appendix to Doc. No. 65. On the evening of May 6, 2005, Ronald telephoned a Signature employee and made a series of harassing comments and threats, alleging the lease was an "act of racism and terrorism" and using the words "queer," "cocksucker," and "motherfucker." McCarthy Complaint, pp. 41-42 of Appendix to Doc. No. 65.

On May 10, 2005, Signature served Ronald with two notices to quit citing the following violations of the rules and regulations contained in his lease with Signature:

5

> You are in violation of the Rules and Regulations: (c) Lessee shall not disrupt the quiet and comfortable enjoyment of other residents. This includes but is not limited to a prohibitions of any unpleasant odors, disturbing noises, disorderly persons, and threatening or foul language. (d) Lessee shall not, nor shall Lessee permit others to loiter or playing any common areas on the property of which the Premises are a part. Neither Lessee nor their guests shall play football, baseball, volleyball, Frisbee, or similar recreational games on the lawns. (r) Lessee shall not engage in nor facilitate any act interfering with the operation of the Premises and related property. (w) Lessee shall not permit any guests to stay with Lessee for over seven (7) days without prior written consent from Lessor.
>
> * * *
>
> Your account is delinquent in the amount of $335.00 for rent, $30.00 for late fee, $-0- for other, for a total of $365.00 for the period from May 1, 2005 to May 31, 2005.

Notice to Cure or Quit, pp. 43-44 of Appendix to Doc. No. 65.

On or about May 11, 2005, Ronald and Carolyn signed, and caused to be filed, the complaint in this case, accusing Signature with threatening "eviction and homelessness for reasons that are not true . . ." See Doc. No. 3, p. 2.

On May 12, 2005, one of the workers at the Signature facility saw Ronald take 5 to 6 "full lengths of white trim across the jobsite to his home" without permission. Thomas Statement, p. 46 of Appendix to Doc. No. 65. On May 17, 2005, Signature received another complaint by one of Ronald's neighbors, accusing him of "threatening" and "bothering" her. Calling Complaint, p. 47 of Appendix to Doc. No. 65. On May 28, 2005, Signature caused to be served on Ronald a termination notice on his breach of the lease "by repeatedly threatening, harassing, intimidating and disrupting the quiet and comfortable enjoyment of the other residents and employees and interfering with the operation of the premises." Ronald was given seven days to return the premises to Signature. See pp. 48-51 of Appendix to Doc. No. 65. On June 7, 2005, Signature commenced an action for unlawful detainer against Ronald in Division II of the Circuit Court of Stone County,

6

Missouri.

On June 20, 2005, Signature employees were conducting a previously announced quarterly inspection of all of the units when Ronald caused a disturbance. The Kimberling City Police Department was dispatched to the scene. The police arrived and observed Ronald yelling at the employees. After separating Ronald from the others, an ambulance arrived and transported Ronald to the hospital where he was held for 96 hours for mental observation.

On June 21, 2005, Signature received a complaint from other tenants at Signature complaining about the disturbances Ronald had caused and his interference with Signature employees. Reishe Complaint, p. 55 of Appendix to Doc. No. 65. On June 21, 2005, Signature received another complaint from Wanda Landreth about noise from Ronald's apartment and his statements that he was with Homeland Security. Landreth Complaint, pp. 56-58 of Appendix to Doc. No. 65. On June 26, 2005, at approximately 10:00 p.m., Kimberling City Police responded to a noise complaint by Wanda Landreth and found Ronald outside his apartment in his wheelchair with a lighted sign that stated "Please donate to the Ronald Hodges Defense Fund." See pp. 59-60 of Appendix to Doc. No. 65. On July 14, 2005, Kimberling City Police cited Ronald for disturbing the peace after being called to his apartment when Ronald had confronted Signature employees and had begun yelling at them. In the early morning hours of July 31, 2005, the Kimberling City Police cited Ronald and Carolyn for disturbing the peace after receiving a noise complaint from Wanda Landreth. Ronald was discovered to have an active arrest warrant from Laclede County and he was arrested.

On August 11, 2005, at the time set for trial on Signature's action against Ronald for unlawful detainer, Ronald and Signature both reported through counsel to the court their settlement of the matter where Ronald would consent to judgment for possession effective August 31, 2005, and Signature would waive claims for past due rent and damage. On

7

August 19, 2005, the court entered the order for unlawful detainer reflecting the settlement of Signature and Ronald "that demand for possession was made by the Plaintiff upon the Defendant . . . on May 28, 2005; that ever since that time the Plaintiff has been and now is entitled to the possession of said premises." See Order, p. 66 of Appendix to Doc. No. 65. On August 31, 2005, Ronald vacated the premises.

**B.	Summary Judgment Standard.**

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment

8

procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

**C.    Discussion.**

Defendant indicates it is entitled to summary judgment on plaintiffs' housing discrimination claims as there are no disputed facts regarding plaintiffs' claims of disparate treatment or failure to provide accommodations.

### 1.    Legal Standard

Plaintiffs have made claims of housing discrimination. Although plaintiffs' pro se complaint is unclear about whether they are proceeding under state or federal anti-discrimination law, these claims may be cognizable under either the Missouri Human Rights Act and/or the federal Fair Housing Amendments Act. The Missouri Human Rights Act, R.S.Mo. § 213.040, provides that it shall be unlawful for a housing provider:

> (6) To discriminate in the sale or rental of, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a disability of:
>
>     (a) That buyer or renter;
>
>     (b) A person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
>     (c) Any person associated with that buyer or renter;
>
> (7) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability of:
>
>     (a) That person;
>
>     (b) A person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
>     (c) Any person associated with that person.

As the MHRA's statutory language is identical to that contained in the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3604 ("FHAA"), Missouri courts are guided by both Missouri law and federal law in deciding a claim of discrimination. See Pollock v. Wetterau Food Distribution Group, 11 S.W.3d 754, 762 (Mo. App. E.D. 1999); Woods v. Tyler Mountain Co., Inc., 73 F.3d 367 (Table) (8th Cir. 1996). Disability discrimination can be proven under 42 U.S.C. § 3604(f) by showing (1) intentional discrimination or disparate treatment, (2) discriminatory effect or disparate impact, or (3) failure to provide reasonable accommodations. Mountain Side Mobile Estates Partnership v. Secretary, 56 F.3d 1243 (10th Cir. 1995); Keys Youth Services, Inc. v. City of Olathe, 248 F.3d 1267, 1272-73 (10th Cir. 2001); ReMed Recovery Care Ctr. v. Township of Willistown, 36 F.Supp.2d 676, 683 (E.D. Pa. 1999); Familystyle of St. Paul, Inc. v. City of St. Paul, 728 F.Supp. 1396, 1401 (D. Minn. 1990); 42 U.S.C. § 3604(f)(3)(B). In the present matter, plaintiffs' claims are for disparate treatment and failure to provide reasonable accommodation. Plaintiffs do not appear to have made a claim that the actions of defendant had a discriminatory effect or disparate impact.

2.   Analysis

Defendant states that plaintiffs' designation of discriminatory incidents (Doc. No. 57, filed on July 10, 2006), indicates 10 alleged discriminatory incidents, which defendant states fall into the following categories:

1.   Plaintiff Ronald Hodges was "forced" to take the apartment he was assigned and subsequently moved into. (Designation No. 1).

2.   Plaintiff Carolyn Hodges was not allowed to reside in the apartment. (Designation No. 2).[2]

---

[2] From the Court's reading of the designation of discriminatory incidents, it also appears that Carolyn Hodges is alleging that defendant did not allow Carolyn to apply for housing because of her mental illness. See Doc. No. 57, ¶ 2. However, Carolyn has failed to put forth evidence supporting this claim, other than her personal beliefs. This is not sufficient to overcome summary judgment.

10

3. Plaintiffs were harassed by Signature employees and by "police and social workers acting on behalf of the resort" (Designation Nos. 3, 5, 8, 9, and 10).

4. Signature failed to install grab bars and pull bars and otherwise make the apartment handicap accessible. (Designation No. 4).

5. Signature sided with neighbors in their complaints against the Hodges. (Designation Nos. 6 and 7).[3]

See Doc. No. 65, Suggestions in Support of Motion for Summary Judgment, p. 9. Defendant properly characterizes Designation Nos. 1, 2, 3, 5, 6, 7, 8, 9, and 10 as claims of disparate treatment, and Designation No. 4 as a claim for failure to provide reasonable accommodation.

### a. Disparate Treatment

Where, as here, plaintiffs have supplied no direct evidence of discrimination, courts generally apply the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to determine whether there has been unlawful discrimination in a disparate treatment case brought under 42 U.S.C. § 3604(f) or the MHRA. Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003); Van Den Berk v. Missouri Com'n on Human Rights, 26 S.W.3d 406, 412 (Mo. App. E.D. 2000). The plaintiff has the initial burden to make a prima facie showing of discrimination by a preponderance of the evidence. Van Den Berk, 26 S.W.3d at 412. Once a prima facie case has been made, the burden shifts to the defendant to rebut plaintiffs' showing by articulating some legitimate, nondiscriminatory reason for the action taken. Id. Then, the burden shifts to the plaintiffs to demonstrate that defendant's justification is mere pretext. Id.

A prima facie case for disparate treatment under 42 U.S.C. §3604 is demonstrated by a showing that: (1) plaintiffs are members of a statutorily protected class; and (2)

---

[3] It appears to the Court that plaintiffs also assert in their seventh designation of discriminatory incidents that Emily Lange, an employee of defendant, disclosed plaintiff Ronald Hodges' mental condition to his neighbors. See Doc. No. 57, ¶ 7. Again, however, plaintiffs have failed to put forth competent evidence supporting this claim.

11

plaintiffs were not offered the same terms, conditions or privileges of rental of a dwelling or were not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination. Delkhah v. Moore, 2006 WL 1320255, *5 (D. Kan.) (citing Khalil v. Farash Corp., 260 F.Supp.2d 582, 588-89 (W.D. N.Y. 2003)).

Here, defendant concedes for purposes of this motion that plaintiff Ronald Hodges is a protected individual based on his handicap. However, defendant asserts that plaintiff Ronald Hodges has not set forth any evidence that he was treated differently from other residents who were not handicapped and engaged in the same conduct as he (i.e., defendant asserts that there is no evidence that non-handicapped tenants, who created disturbances in violation of their leases, were treated differently). In response to the motion for summary judgment, plaintiffs set forth no evidence that they were treated differently from similarly situated tenants. Accordingly, defendant's motion should be granted on this basis.

Moreover, the Court agrees that defendant has met its burden of demonstrating there was a legitimate non-discriminatory reason for its actions. From the record, it does not appear that plaintiff Ronald Hodges was "forced" to take his apartment; instead, Ronald Hodges took the apartment with the knowledge that if he chose to pass up the available apartment, he would be moved to "the end of the line." Depo. of Ronald Hodges, p. 13 line 24 to p. 14 line 4. With respect to allowing plaintiff Carolyn Hodges to reside in his apartment, paragraph (w) of Plaintiff's lease states in pertinent part: "Lessee shall not permit any guests to stay with Lessee for over seven (7) days without prior written consent from Lessor," and the Tax Credit Addendum to Plaintiff's lease does not indicate that anyone other than Ronald Hodges would be permitted to occupy the premises. Plaintiff Ronald Hodges breached his lease agreement in allowing plaintiff Carolyn Hodges to reside in his apartment.

With respect to plaintiffs' claims that they were harassed by defendant's employees and by "police and social workers acting on behalf of the resort," and that defendant sided with their neighbors in complaints against the Hodges, it is apparent as detailed in the above recitation of facts that defendant had strong reason to believe that plaintiffs were disrupting the quiet and comfortable enjoyment of other residents of the apartment complex.

As these are legitimate, non-discriminatory reasons for the actions taken, the burden then shifts to plaintiffs to demonstrate pretext. Plaintiffs have put forth no evidence through which this Court could find that defendant's justification for its actions is mere pretext. Accordingly, defendant's motion for summary judgment as to plaintiffs' claims of disparate treatment is **GRANTED.**

b. Reasonable Accommodation

Plaintiffs assert that defendant "failed to install grab bars and pull bars and otherwise make the apartment handicap accessible." Doc. No. 57, Designation No. 4. Defendant notes that this is a claim for failure to provide reasonable accommodation.

As discussed by defendant, a handicapped individual must request reasonable accommodation in order to trigger a duty of the landlord to accommodate the individual. Tsombanidis v. West Haven Fire Dept., 352 F.3d 565, 579 (2d Cir. 2003)(noting, "[A] plaintiff must first use the procedures available to notify the governmental entity that it seeks an exception or variance from the facially neutral laws when pursuing a reasonable accommodation claim."). Further, the accommodation must be reasonable and necessary to give the plaintiff an equal opportunity to use and enjoy his apartment. See 42 U.S.C. § 3604(f)(3).

Here, as discussed by defendant, plaintiff Ronald Hodges accepted the premises without complaint at the time he moved in. See pp. 9-10 and 33 of Appendix to Doc. No. 65. After plaintiff fell in his bath tub, defendant installed grab bars in plaintiff's apartment.

13

See p. 12 of Appendix to Doc. No. 65. Plaintiffs point to no other requested accommodations that were denied to them. As plaintiffs were given reasonable accommodation upon request, the Court agrees with defendant that summary judgment is appropriate as to this claim.

        c.      Res Judicata

Defendant finally notes that, to the extent that plaintiffs claim (a) that they are entitled to possession of the apartment, or (b) that defendant acted illegally in obtaining possession of the premises, those claims are barred by res judicata as they were heard (or could have been heard) in the unlawful detainer action in Division II of the Circuit Court of Stone County, Missouri. As discussed in the statement of facts, above, the Circuit Court's order of August 19, 2005, indicated "that demand for possession was made by the Plaintiff upon the Defendant . . . on May 28, 2005; that ever since that time the Plaintiff has been and now is entitled to the possession of said premises." See p. 66 of Appendix to Doc. No. 65. The Court agrees with defendants that any further action on plaintiffs' claims for possession of the apartment or that defendant acted illegally in obtaining possession of same is barred under the principles of res judicata. See Farley v. Missouri Dept. of Natural Resources, 592 S.W.2d 539, 540 (Mo. App. W.D. 1979); Bannum, Inc. v. City of St. Louis, 195 S.W.3d 541, 544 (Mo. App. E.D. 2006). Summary judgment is appropriate as to these claims.

Therefore, for all the foregoing reasons, defendant's motion for summary judgment (Doc. No. 65) is **GRANTED** and this case is **DISMISSED.**

## IV.    Defendant's Motion for Enlargement of Time (Doc. No. 75)

As defendant's motion for summary judgment (Doc. No. 65) has been granted, defendant's motion for enlargement of time (Doc. No. 75) is **DENIED AS MOOT.**

## V.    Conclusion

Therefore, for the foregoing reasons,

14

(1) Defendant's Motion for Summary Judgment (Doc. No. 65) is **GRANTED** and this case is **DISMISSED**;

(2) Defendant's Motion to Strike Plaintiffs' Response to Defendants' Reply Suggestions in Support of Defendant's Motion for Summary Judgment (Doc. No. 72) is **GRANTED**;

(3) Plaintiffs' Motion for Reconsideration of Motion for Appointment of Counsel (Doc. No. 73) is **DENIED**; and

(4) Defendant's Motion for Extension of Time (Doc. No. 75) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of the Court send a copy of this order via regular and certified mail to plaintiffs at the following addresses:

Ronald Lee Hodges
Carolyn Ann Hodges
616 Evergreen Avenue
Apartment 22
Hollister, Missouri 65672

**IT IS FURTHER ORDERED** that the Clerk of the Court send a copy of this order via e-mail to plaintiffs at the following address: mahatmahodges@msn.com.

**IT IS SO ORDERED.**

Date:  1/11/07
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
United States District Judge